**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:20-cv-23265-BLOOM/LOUIS

MILAGROS IGLESIAS,

     Plaintiff,

vs.

KILOLO KIJAKAZI, Commissioner
of the Social Security Administration,[1]

     Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on Plaintiff Milagros Iglesias' Motion for Summary Judgment (ECF No. 23) and Defendant Kilolo Kijakazi's, Commissioner of the Social Security Administration ("Commissioner"), Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 24). Plaintiff did not file a reply. The Honorable Beth Bloom, United States District Judge, referred the cross motions to the undersigned Magistrate Judge for a Report and Recommendation (ECF No. 20). The undersigned has fully considered the Motions, the record, and is otherwise duly advised in the matter.

### I.     PROCEDURAL BACKGROUND

This case involves an application for Social Security disability benefits under the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq.* On May 22, 2017, Plaintiff applied for Social Security disability insurance benefits and supplemental security income under Titles II and XVI of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit.

the Act, alleging an ongoing disability due to injuries to her cervical spine, left ankle, and left shoulder as well as illnesses and conditions such as constant dizziness, anxiety, tendinitis of the left hand, an immobile left shoulder, insomnia, memory loss, and frequent fainting (R. at 84-85).[2] Plaintiff alleges a disability onset of April 26, 2017 (*id*. at 85). These claims were initially denied on September 7, 2017, and again upon reconsideration on February 20, 2018 (*id*. at 95; 127).

Following the denial of her claims, Plaintiff requested an administrative hearing, which was held on June 5, 2019, before Administrative Law Judge ("ALJ") Lornette Reynolds (*id*. at 41). At the hearing, Plaintiff was represented by counsel, and Plaintiff, as well as Vocational Expert ("VE") Lorin Lovely, testified.

On July 15, 2019, the ALJ issued a decision denying Plaintiff's application for disability insurance benefits and supplemental income, finding that Plaintiff was not disabled within the meaning of the Act (*id*. at 36). Plaintiff requested a review of the ALJ's decision, and on June 1, 2020, the Appeals Council denied Plaintiff's request (*id*. at 1). Plaintiff now seeks review of the administrative proceedings, and both parties moved for summary judgment. Plaintiff has exhausted her administrative remedies, and, as such, this case is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    STANDARD OF REVIEW

### A.  Legal Principles

A district court's review of the ALJ's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*,

---

[2] Citations to the Certified Administrative Record (ECF No. 18) are indicated by "R" followed by the Commissioner's Bates numbering stamp (the bold font numbers located in the bottom right-hand corner).

416 Fed. App'x. 861, 862 (11th Cir. 2011); *see also Fiebel v. Comm'r*, No. 18-80642, 2019 WL 4694220, at *1 (S.D. Fla. Aug. 15, 2019). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the ALJ's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the ALJ's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the ALJ. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the ALJ, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the ALJ to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### B. Regulatory Framework

A claimant must be "disabled" to be eligible for Social Security benefits. 42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline

a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her past relevant work despite her impairments; and (5) whether she can perform other work found in the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

## III.   THE RECORD

### A.  Hearing Testimony

#### i.  Plaintiff's Testimony

At the time of her hearing, Plaintiff was 51 years old and living with her 12-year-old daughter in a studio apartment in Miami, Florida (R at 49-51).  Plaintiff previously worked for an insurance agency handling underwriting, customer service, and other administrative activities for three years (*id*. at 56).  Prior to this, Plaintiff had a similar role at a different insurance agency (*id*.).  Plaintiff alleges she has been unable to engage in any full-time, completive work since April 26, 2017 because of the onset of chronic pain and depression (*id*. at 50-52).

Plaintiff contends she cannot sit for more than 20 minutes, has trouble sleeping, and suffers from chronic pain in her neck, left arm, and left ankle (*id*. at 52; 59).  Plaintiff claimed that she struggles using her left side and has pain and inflammation in her ankle whenever she walks (*id*. at 59).  Plaintiff testified that she takes a variety of prescription medication to manage her pain and inability to sleep including Gabapentin, Tramadol, Naproxen, Metformin, Zantac, and several other medications whose names she could not recall (*id*.).  Regarding her trouble sleeping, Plaintiff claimed that she spends half the day in bed and takes naps throughout the day (*id*. at 60).

Plaintiff underwent surgery on her neck in April of 2017 but testified she had no improvements to her conditions after the surgery (*id*. at 54). She alleges her doctor informed her that she would need to undergo a second operation for her neck, an operation for her shoulder, and an evaluation for her left ankle (*id*. at 63).

Plaintiff testified that after her 2017 neck surgery, she began homeschooling her daughter because she could no longer drive her to school (*id*. at 55). Plaintiff claimed her daughter helps with the laundry, cleaning, cooking, and grocery shopping because Plaintiff cannot stand long enough to complete these tasks. (*id*. at 59-61). Plaintiff further stated that she cannot walk for long distances, cannot lift things, and needs to spend substantial time in bed (*id*.). Plaintiff also alleged she cannot lift more than 15-to-20-pound objects comfortably (*id*. at 62). Finally, Plaintiff testified she has depression and is sometimes irritable and angry, with a frequent desire to isolate herself from others (*id*.).

### ii. Vocational Expert Testimony

The VE, Lorin Lovely, also testified at the hearing. The VE classified Plaintiff's past work as being a customer service representative for insurance (*id*. at 65-66). The VE further classified the exertion level of Plaintiff's work as sedentary with a specific vocational profile ("SVP") of six and dictionary of occupational titles ("DOT") code of 249.262-010 (*id*. at 66). When presented with a hypothetical person of the same age and educational background as Plaintiff who is able to perform basic amounts of light work; who can frequently climb ramps and stairs but never ladders, ropes, or scaffolds; can frequently balance, can handle occasional stooping, occasional kneeling, crouching, and crawling; has no established manipulative, visual, or phonic limitation; should avoid concentrated exposure to extreme cold and heat, hazards such as unprotected heights or operating dangerous machinery and heavy vibrations, and avoid working on angulated surfaces, the VE indicated that this hypothetical person would be able to perform all of Plaintiff's past work (*id*. at 66-67).

When the initial hypothetical was modified to be limited to a full range of sedentary work, the VE testified that Plaintiff's prior work as an insurance customer service representative could also be performed (*id*. at 67).  When the first hypothetical was modified to add the additional limitations that the hypothetical claimant requires occupational subtlety in procedures and few changes during the workday; limited to occasional interaction with the public on routine matters; can respond appropriately to work issues in a usual, unskilled work setting; and maintain regular attendance and be punctual within customer tolerances and perform activities within schedule, the VE concluded with those restrictions, the hypothetical individual would be precluded from doing any of the Plaintiff's past work  (*id*. at 67-68).  However, the VE stated that under those restrictions, a person could be a housekeeper, an office helper, or a laundry sorter (*id*.).

The VE concluded that this hypothetical claimant would not be able to perform any of claimant's past work or any other job (*id*. at 77).  The VE testified that all his responses were consistent with the DOT (*id*. at 68-70).

### B.  Summary of Relevant Medical Evidence

### i.  Roberto Moya, M.D.

Records reveal that Plaintiff initially sought treatment from Roberto Moya, M.D., an orthopedic surgeon, after suffering from injuries sustained in an October 2015 accident (*id*. at 420).[3] Dr. Moya opined that it was within a reasonable degree of medical certainty that Plaintiff's injuries were the direct result of this accident (*id*. at 423).  Dr. Moya prescribed Plaintiff medication and on March 17, 2016, performed a cervical facet joint nerve block under fluoroscopy but ultimately found that Plaintiff failed to respond to treatment of her cervical spine (*id*. at 429-431).  Plaintiff underwent neck surgery in April of 2017 (*id*. at 451).  On April 10, 2017, Dr. Moya conducted a post-operative

---

[3] Medical records reveal Plaintiff's injuries resulted from an accident that occurred in October of 2015 when a heavy tray fell on Plaintiff's head, neck, left shoulder, and left ankle while Plaintiff was at a restaurant (R at 408; 420; 517; 519).

evaluation (*id*.).  Dr. Moya reported that Plaintiff had moderate pain at the surgical site and her range of motion was moderately restricted with pain (*id*.).  Dr. Moya prescribed Gabapentin, Tramadol HCL, and Zofran and Plaintiff was instructed to follow up in two weeks (*id*.).  At a return visit on April 25, 2017, Dr. Moya again reported moderate restriction in Plaintiff's range of motion and that her wound had healed (*id*. at 453).  Dr. Moya observed some swelling in Plaintiff's left ankle and foot and noted her pain and tenderness in her left shoulder (*id*. at 454).  He recommended and provided shoulder joint inspection therapy into Plaintiff's left shoulder (*id*.).  On May 22, 2017, Plaintiff received an additional injection into her left shoulder and was prescribed Percocet, Elavil, and Voltaren Gel (*id*. at 458).  Dr. Moya also reported that the imaging of Plaintiff's cervical spine showed the implants were in place and healing (*id*. at 457).  At a final surgical evaluation with Dr. Moya on June 19, 2017, Dr. Moya noted that Plaintiff had reached maximum medial improvement and had sustained a 27% partial permanent impairment of the whole body based on the American Medical Association ("AMA") Guides to Evaluation of Permanent Impairment (*id*. at 460).  In May and June of 2018, Plaintiff returned to Dr. Moya and he noted that she was able to do light exercises with weights, but advised her to avoid lifts above her shoulders, squats, or impact aerobics (*id*. at 543; 547).  At Plaintiff's final documented visit with Dr. Moya on April 11, 2019, he advised her to have an MRI study of the cervical spine and the left shoulder (*id*. at 551).  The MRI, dated April 21, 2019, showed a C4-C5 central disc herniation, which was a new finding, a C5-C6 central disc herniation, and a C6-C7 central disc herniation (*id*. at 518).  The MRI of Plaintiff's left shoulder showed mild tendinitis, mild subacromial spurring and minimal bursitis, but no significant changes (*id*. at 519).  Throughout Plaintiff's treatment and examinations undertaken by Dr. Moya, Plaintiff demonstrated tenderness and restricted range of motion in her cervical and thoracic spine, restricted range of motion,

tenderness, and impingement of her left shoulder, as well as mild swelling and tenderness in her left ankle.

### ii.   James Voglino, M.D.

Plaintiff visited with Dr. James Voglino, an orthopedic surgeon, on May 20, 2019, for an independent examination (*id*. at 530-535).  Dr. Voglino found that Plaintiff suffered from significant ongoing pains and permanent injury and limitations sustained during her October 2015 injury (*id*. at 534).  Dr. Voglino stated that Plaintiff's April 5, 2017 cervical spine surgery partially helped but her symptoms persisted or progressed (*id*.).  Dr. Voglino reported that Plaintiff's cervical spine would benefit from further care, to include pain injections, and potentially an additional cervical spine surgery along with arthroscopic surgery for a partial rotator cuff tear in her left shoulder (*id*.).  Dr. Voglino noted that Plaintiff's left ankle warranted further evaluation from an orthopedic or foot sub-specialist (*id*. at 535).  Dr. Voglino also opined that Plaintiff had permanent restrictions, to include limitations of prolonged walking and exercises, along with ongoing headaches, dizziness, numbness, pain, and driving limitations while on medications (*id*.).  For treatment, Dr. Voglino stated that Plaintiff would benefit from future rounds of physical therapy, which he noted that, at the time of this examination, "she has not had for some time (1-2 years?)" (*id*.).

### iii.   Mayra M. Miro, Psy. D.

Mayra Miro, a Doctor of Clinical Psychology, conducted a consultative examination with Plaintiff in August of 2017 (*id*. at 407-411).  Dr. Miro diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood but opined that her prognosis was good with appropriate treatment and interventions (*id*.).  Dr. Miro referred Plaintiff to a psychiatric evaluation to assess her need for treatment and medication, during which she reported a history of anxiety and depression from childhood (*id*. at 410).  Plaintiff correctly produced six out of fifteen items on a memory test,

but because this performance was below the cut off score, Dr. Miro suggested that Plaintiff did not put forth her best effort on the test (*id*. at 407-408). The evaluation also indicated that Plaintiff's attention and concentration were impaired, that there was a slight deficit in immediate memory, but otherwise her mental status was unremarkable (*id*. at 409).

### iv.   Serenity Community Mental Health Center

On December 7, 2017, Plaintiff voluntarily presented to the Serenity Community Mental Health Center ("Serenity") for a psychiatric evaluation (*id*. at 472-474). At Serenity, Plaintiff was diagnosed with major depressive disorder, recurrent, severe with psychotic symptoms, and prescribed Mirtazapine and Escitalopram (*id*. at 473). Plaintiff followed up with another visit to Serenity on January 24, 2018, where she reported only sleeping three to four hours per night and described symptoms of hopelessness, worthlessness, sadness, poor coping skills, and helplessness (*id*. at 475). She denied any suicidal or homicidal thoughts (*id*.). Plaintiff visited Serenity on two additional occasions in November of 2018 and January of 2019 and reported she was unstable with her medication (*id*. at 561-564). Serenity adjusted her medication and in March of 2019, Plaintiff reported improvements to her mood, sleeping patterns, and again denied any suicidal or homicidal thoughts (*id*. at 565-566). Plaintiff's last documented visit to Serenity occurred on April 30, 2019 and her mental status examination indicated her activity level was normal, her thought process was logical, she presented neatly, and her judgment and insight were fair (*id*. at 567-568).

### v.   State Agency

State agency psychologists, Michael Plasay, Ph.D. and Barry Morris, Ph. D., indicated that Plaintiff's depressive, bipolar, and related disorders are non-severe (*id*. at 84-97; 112-143). Moreover, Dr. Morris opined that Plaintiff is limited to simple, routine tasks with limited social interaction (*id*. at 86). Steven Arkin, M.D., a state agency medical consultant, reviewed Plaintiff's

evidence on February 20, 2018, and opined that Plaintiff could perform light work and could frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds; frequently balance, occasionally stoop, frequently kneel, occasionally crouch, and frequently crawl (*id*. at 122). Dr. Arkin further opined that Plaintiff should avoid concentrated exposure to extreme temperatures and hazards (*id*.).

### vi.   Mark A. Hernandez, M.D. and Eric Campillo, Psy. D.

On April 30, 2019, Dr. Hernandez and Dr. Eric Campillo opined in a medical source statement that Plaintiff had, among other symptoms, decreased energy, difficulty thinking or concentrating, and deeply ingrained, maladaptive patterns of behavior (*id*. at 523). The doctors also found that Plaintiff was depressed and anxious, suffering from insomnia and low self-esteem (*id*. at 528).

### IV.   DISCUSSION

#### A.   The Sequential Evaluation

In making a disability determination, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id*.

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. § 404.1520(d).  If so, the ALJ will find the claimant disabled without considering age, education, and work experience. *Id*.  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id*. At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines.  *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is not

doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 404.1569.  The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience.  *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule."  20 C.F.R. § 404.1569.  Therefore, "[e]xclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."  *Phillips v. Barnhart,* 357 F.3d 1232, 1242 (11th Cir.2004) (citation omitted)*;see also Walker,* 826 F.2d at 1002-03.  The Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citation omitted).  A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing.  *Id.*

### B.  ALJ's Application of the Sequential Evaluation

After considering the evidence, the ALJ found that, although Plaintiff is unable to perform any past relevant work, she is able to perform other jobs that exist in significant numbers in the national economy (R at 34-35).  Therefore, the ALJ concluded that Plaintiff was not disabled at any time between the Alleged Onset Date and the date of the ALJ's decision (*id*. at 36).

Preliminarily, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021 (*id*. at 23); *see Moore*, 405 F.3d at 1211 ("For [disability insurance benefits] claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she was insured.  42 U.S.C. § 423(a)(1)(A) (2005).  Because [plaintiff's]

last insured date was December 31, 1997, her disability insurance benefits appeal requires a showing of disability on or before that date.").  Given that Plaintiff met the insured status requirements through, and following, the date of the hearing, the insured status requirement presented no obstacle.

Addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date of April 26, 2017 (R at 23-24). Next, the ALJ found that Plaintiff had degenerative joint disease of the cervical spine, partial-thickness anterior rotator cuff tear with mild tendinitis, osteoarthritis, type II diabetes mellitus without complication, an adjustment disorder with mixed anxiety and depressed mood, and major depressive disorder (*id*. at 24).[4]  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id*.).

The ALJ then assessed Plaintiff's RFC.  The ALJ discounted Plaintiff's subjective complaints, finding that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's claims regarding the intensity, persistence and limiting effects of his symptoms were inconsistent with other record evidence (*id*. at 28).  In doing so, the ALJ discussed Plaintiff's medical history, beginning with her accident in October of 2015, when a heavy tray fell on her at a restaurant, to the results of examinations by multiple doctors, and opinion evidence from state agency consultants who reviewed the medical evidence on February 20, 2018 (*id*. at 29-34).

Ultimately, based on the ALJ's consideration of all of the evidence, the ALJ determined that Plaintiff had the RFC to perform light work (*id*. at 26).  The ALJ found Plaintiff could stand and/or walk for up to six hours in an eight-hour day and lift 10 pounds frequently and 20 pounds occasionally

---

[4] The ALJ found Plaintiff's obesity and non-infective gastroenteritis and colitis, unspecified, not to be severe because neither had more than a minimal effect on her ability to perform basic work (R at 24.).

13

(*id*).  Furthermore, the ALJ determined Plaintiff could frequently climb ramps and stairs, but never ladders, ropes, or scaffolds, that the Plaintiff could frequently balance, and could occasionally stoop, kneel, crawl, and crouch (*id*.).  The ALJ found Plaintiff had no established manipulative, visual, or communicative limitations, but should avoid concentrated exposure to extreme cold, extreme heat, hazards, such as unprotected heights or the operation of dangerous machinery, and heavy vibrations, while also avoiding working on undulating surfaces (*id*. at 26-27).  Mentally, the ALJ determined Plaintiff can understand, remember, and carry out simple, routine, and repetitive tasks, sustaining her attention and concentration for two-hour periods at a time and for eight hours in the workday on simple, routine, repetitive tasks and instructions (*id*. at 27).  In addition, the ALJ concluded that Plaintiff can use her judgment in making work related decisions related to simple, routine, repetitive tasks and instructions, that she is able to respond appropriately to supervision, and requires an occupation that calls for only occasional interactions with her co-workers or the public on routine matters and has set routines and procedures with few changes during the work day (*id*.).  The ALJ determined that Plaintiff is able to appropriately respond to work pressures in a usual work setting, can perform activities within a schedule, and can maintain regular attendance and be punctual within customary tolerances. (*id*.).

After assessing Plaintiff's RFC, the ALJ considered whether Plaintiff had the ability to perform her past relevant work as a customer service representative (*id*. at 34).  The ALJ concluded, based in part on testimony from the VE, that Plaintiff was not able to perform her past relevant work (*id*.)

Given that Plaintiff could not perform her past relevant work, the ALJ considered Plaintiff's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines, to determine whether a significant number of jobs that Plaintiff could perform existed in the national

economy (*id*. at 35-36).  The ALJ noted that Plaintiff was 49 years old on the Alleged Onset Date,

which is defined as a younger individual age 18-49 (*id*. at 34).  Plaintiff subsequently changed her

age category to closely approaching advanced age under 20 C.F.R. § 404.1563 and 416.964 (*id*.).  The

ALJ also found Plaintiff to have limited education and that she is able to communicate in English (R

at 34).  The ALJ relied on testimony from the VE to determine whether jobs existed in the national

economy for an individual with Plaintiff's age, education, work experience, and RFC (*id*. at 35).  The

VE identified the occupations of housekeeper, office helper, and laundry sorter (*id*.).  The ALJ found

that the VE's testimony was consistent with the DOT (*id*.).  Based on the VE's testimony, the ALJ

concluded that considering Plaintiff's "age, education, work experience, and [RFC], [Plaintiff] is

capable of making a successful adjustment to other work that exists in significant numbers in the

national economy" (*id*. at 35-36).  Therefore, the ALJ found that Plaintiff was not disabled (*id*. at 36).

### C.  Analysis of Issues

Plaintiff argues that the ALJ's RFC finding here is necessarily deficient because it does not

take into account all limitations arising from the claimant's impairments.  In response, Defendant

contends Plaintiff failed to meet her burden of proving that she was disabled.

### i.  Substantial Evidence

Plaintiff argues that the ALJ's RFC determination, that she is capable of engaging in the

amount of walking and standing along with the simultaneous and extensive amount of lifting and

carrying that is required of light exertional work, is not supported by substantial evidence.

The RFC is that which an individual is still able to do despite her limitations caused by her

impairments.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R.

§ 404.1545(a)).  As well as age, education and work experience, a claimant's RFC is considered in

determining whether the claimant can work.  *Id.*  (citing 20 CFR § 404.1520(f)).  In making this

determination, the ALJ follows a two-step process to determine both the existence of claimant's physical or mental impairments and the accompanying limiting effects of those impairments on claimant's ability to function.  The ALJ must first determine whether there is an underlying medically determinable impairment that could "reasonably be expected to cause the claimant's pain or other symptoms" and second, the ALJ must "evaluate the intensity and persistence of the symptoms and their effect on the claimant's work."  20 C.F.R. § 416.929(a), (c); *Powell v. Comm'r of Soc. Sec.*, 571 F. App'x 914, 916 (11th Cir. 2014).  If the objective medical evidence does not substantiate a claimant's subjective statements on the intensity and persistence of pain or other symptoms, then the ALJ must evaluate the credibility of the claimant's statements based on other evidence of record.  20 C.F.R. § 404.1529(c); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir. 2002). Furthermore, "[t]o the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination."  *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015).

Here, the ALJ determined that Plaintiff has the RFC to perform light work (R at 26).  The ALJ's determination followed the two-step process of the Eleventh Circuit.  *See Powell*, 571 F. App'x at 916.  First, the ALJ found Plaintiff suffered from degenerative joint disease of the cervical spine, partial thickness anterior rotator cuff tear with mild tendinitis, osteoarthritis, type II diabetes mellitus without complication, an adjustment disorder with mixed anxiety and depressed mood, and major depressive disorder (*id*. at 24).  The ALJ then determined Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (*id*. at 28).

Although Plaintiff stated that her medication for pain, diabetes, and depression is helpful, the ALJ found she was not always compliant with her medication and treatment, often resulting in a

reported increase of symptoms (*id*. at 27).   The ALJ indicated that Plaintiff had documented improvement with compliance, yet Plaintiff still testified that she had no improvement after her April 2017 surgery (*id*. at 28).   The ALJ noted several other inconsistent statements made by Plaintiff that, in her opinion, rendered Plaintiff's allegations of disabling symptoms less persuasive.   For instance, Plaintiff reported an eleventh-grade education to the agency, told the consultative examiner that she completed ninth grade, reported to another treating source that she completed twelfth grade, and testified at the hearing that she completed eleventh grade.   Additionally, the ALJ questioned how Plaintiff could allege disabling symptoms following an accident in 2015 yet return to work and report income through 2018 (*id*. at 23).   The ALJ also noted, in the context of whether Plaintiff had engaged in gainful activity, that Plaintiff denied that the self-employment income she reported in 2018 was in fact earned from any work activity she performed (*id*.).   Instead, Plaintiff reported her savings as self-employment income on her taxes in order to collect earned income credit from the Internal Revenue Service ("IRS") (*id*. at 23-24).   The ALJ found that Plaintiff's acknowledgement of falsely reporting self-employment income further undermined the persuasiveness and reliability of her "allegedly disabling symptoms" (*id*. at 24). The ALJ similarly noted that Plaintiff's receipt of unemployment benefits, while not disqualifying to the determination, further undermined her claim of disabling symptoms, noting that receipt of such benefits is condition on her ability to warrant her present ability to work.

The standard of review requires this Court to affirm an ALJ's decision so long as the decision applies the correct legal standard and is supported by substantial evidence.   *Dyer*, 395 F.3d at 1210 (citing *Phillips*, 357 F.3d at 1240 n.8).   There must be "more than a mere scintilla, but less than a preponderance" of substantial evidence to support the ALJ's decision.   *Hale*, 831 F.2d at 1011 (internal quotation and citation omitted).

The ALJ determined Plaintiff has the capacity to carry out certain tasks yet Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence.  Plaintiff supports her argument by chronologically listing each medical procedure, examination, and evaluation she experienced, beginning with her neck surgery on April 5, 2017 and ending with the May 2019 independent evaluation of her cervical spine, left shoulder, and left ankle, conducted by Dr. James Voglino (ECF No. 23 at 6-15).  Plaintiff questions the lack of corresponding limitations in the ALJ's RFC finding regarding reaching, handling, or fingering.  She highlights her multi-level cervical spine disc herniations, her broken superior wing of an LDR/ROI-C implant in her cervical spine, her impinged and torn rotator cuff, and her chronic ankle pain and swelling, while pointing out the difficulty of "lifting and carrying slightly more than a gallon of milk for two-thirds of an eight-hour workday . . . as well as lifting and carrying slightly more than two gallons of milk for one-third of an eight-hour workday . . . all while standing and walking for up to six hours a day for a total of 30 hours a week," with these conditions (*id*. at 15).  In response, Defendant avers that Plaintiff failed to demonstrate how her list of impairments actually limits her ability to work and points out her "diagnoses do not establish work-related limitations" (ECF No. 24 at 8).

Plaintiff has effectively asked the Court to reweigh the medical evidence and substitute its own judgment for the ALJ.  *See Phillips*, 357 F.3d at 1240.  Despite Plaintiff's complaint that substantial evidence does not support the ALJ's finding, the ALJ accorded significant weight to the state agency medical consultant, Dr. Arkin, who opined that Plaintiff could perform light work (R at 32). The ALJ found his opinion persuasive, as it was generally consistent with Dr. Moya's records and the overall record (*id*.).  The ALJ concluded Plaintiff had not been under a disability, as defined in the Act, from her alleged onset date of April 26, 2017, through the date of the decision (R at 36). The ALJ took into consideration Plaintiff's daily activities, symptoms, medication, precipitating and

aggravating factors, treatments, the objective medical findings, the consultative examination reports, and the functional limitations.

Although not specifically addressing Plaintiff's limitations regarding reaching, handling, or fingering, the undersigned finds that this did not affect the ALJ's ultimate determination that Plaintiff has no manipulative limitations. *See Hunter*, 609 F. App'x at 558. The ALJ reviewed the medical evidence in the record to include reports from Plaintiff's long-time treating source, Dr. Moya (*id.* at 30). For instance, at Plaintiff's June 19, 2017 and December 7, 2017 appointments with Dr. Moya, she complained of numbness in her left hand (*id.* at 459; 463). At her most recent exam on April 11, 2019, Plaintiff did not complain of any numbness in her left hand and instead complained of numbness and tingling in the cervical spine and left arm (*id.* at 550). Dr. Moya did not reference any manipulative limitations, nor did Plaintiff complain of limitations reaching, handling, or fingering (*id.* at 550). Dr. Moya recommended physical therapy and prescribed Mobic and Omeprazole to be taken as directed, along with Tylenol for pain (*id.* at 551). The ALJ considered Plaintiff's noncompliance with taking her medicine (*id.* at 492; 496; 488), her documented improvement with compliance (*id.* at 554-568; 569-574), and her testimony alleging a lack of improvement following her surgery (*id.* at 54), which is inconsistent with multiple clinical notes proving otherwise (*id.* at 471; 484-485; 488; 493; 496).

The undersigned finds the ALJ applied the correct legal standard, and, having independently reviewed Plaintiff's medical records, her decision was supported by substantial evidence (*id.* at 21-36). "If the [ALJ's] decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips*, 357 F.3d at 1240; *see also Espaillat v. Saul*, No. 19-cv-61703-Bloom/Valle, 2020 WL 5087030, at *3 (S.D. Fla. Aug. 28, 2020) (affirming the ALJ's decision because each of plaintiff's objections to the ALJ's alleged errors evaluating and assigning

proper weight to the evidence in the record, "in essence, requests that this Court reweigh the evidence or decide facts anew, rather than affording the requisite amount of deference to the ALJ Decision.")(internal quotations and citations omitted).

### ii. Dr. Voglino

Plaintiff also contends that the ALJ lacked good cause to accord little weight to Dr. Voglino's opinion. In determining the claimant's RFC, the ALJ evaluates every medical opinion received and assigns it a particular amount of weight. *See* 20 C.F.R § 404.1527(c). The ALJ generally grants more weight to a medical opinion the longer a medical provider has treated a claimant and the more knowledge that the provider has about a claimant's impairment. 20 C.F.R. § 404.1527(c)(2)(i), (ii). When the ALJ articulates specific reasons for failing to give a medical opinion controlling weight, and those reasons are supported by substantial evidence, the Court will not reverse the ALJ's decision. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 861 (11th Cir. 2019) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2015)); *see also Hunter*, 609 F. App'x at 558.

Here, Plaintiff contends Dr. Voglino, a board-certified orthopedic surgeon, opined that Plaintiff's "permanent restrictions include limitations of prolonged walking and exercise-lifting, and driving limitations while on medications" (ECF No. 23 at 14). Plaintiff avers that Dr. Voglino's findings were objective and consistent when compared with the "other physicians of record and objective diagnostic imaging and radiographic findings" (*id*. at 14-15). Plaintiff contends that the ALJ erred in finding Dr. Voglino's opinion unpersuasive because Dr. Voglino had only seen Plaintiff once.

The fact that Dr. Voglino saw Plaintiff only once is is only one factor the ALJ considered in making her determination. The ALJ described Dr. Voglino's opinion as "rather vague" and found

that Dr. Voglino relied on the Guidelines of the AMA rather than the standards from the Act (R at

34).  Dr. Voglino also did not do a function-by-function assessment of Plaintiff's condition (*id*. at 33).

In addition, Dr. Voglino opined that Plaintiff's medication would affect her ability to drive,

yet there is a lack of evidence that Plaintiff ever reported *any* side effects from her medications to her

long-time treating source (*id*. at 33).[5]  Moreover, the ALJ considered the fact that Dr. Voglino issued

his opinion before Plaintiff underwent pain management or physical therapy as recommended (*id*. at

33).  Plaintiff argues that the evidence does not support the ALJ's conjecture that pain management

or physical therapy would have improved Plaintiff's functioning.  Notwithstanding, the undersigned

notes that the ALJ did not substitute her opinion for Dr. Voglino's professional judgment, as Dr.

Voglino himself noted that it had been nearly two years since Plaintiff had completed physical therapy

and she would likely benefit (*id*. at 535).  Ultimately, it is the ALJ's duty to weigh the medical

evidence.  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (reiterating that the ALJ is to

weigh the evidence and make credibility determinations); and the undersigned finds that the ALJ

properly supported her decision to afford less weight the opinion of Dr. Voglino.

## V.    RECOMMENDATION

The undersigned respectfully recommends that Plaintiff Milagros Iglesias' Motion for

Summary Judgment (ECF No. 23) be **DENIED** and that Defendant Andrew Saul's, Commissioner of

the Social Security Administration, Motion for Summary Judgment with Supporting Memorandum

of Law and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 24) be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendation

---

[5] In her decision, the ALJ noted that Plaintiff did not report any side effects to her long-time treating source Dr. Miro (R at 33).  From the context in which this statement is made this appears to be scrivener's error and the ALJ here meant Dr. Moya.  Records from both her long-time treating sources, Dr. Moya and Dr. Marichal, do not indicate that Plaintiff reported any side effects from her medications (*id*. at 451-70; 477-514; 517-20; 537-39; 541-53).  *See also Hunter*, 609 F. App'x at 558.

with the Honorable Beth Bloom, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

    **RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 14th day of October, 2021.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE